UNITED STATES DISTRICT COURT for the
EASTERN DISTRICT OF NEW YORK

GARNELL THOMPSON, Petitioner

V.

DALE ARTUS, Superintendent
Clinton Correctional Facility, Respondent.

1:10-cv-BROOKLYN OFFICE
Traverse

FILED
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y.
★ APR 11 2012 ★
BROOKLYN OFFICE

State of New York
County of Clinton

Petitioner by this Traverse responds to the allegations of Respondent's Answer to district Court's order that Respondent show cause on or before April 1, 2012, why the grounds advanced in Mr Thompson's Supplemental pleadings do not entitle Petitioner to relief.

1. Mr Thompson admits the truth of Paragraph #1 of the Answer that alleges [he] was convicted in the Supreme Court [Kings County, New York on October 26th, 2005]

2. Mr Thompson denies the truth of the allegations in Paragraph(s)

3. Mr Thompson does not have sufficient knowledge to admit or deny the truth of the allegations in Paragraph(s) 6-18 but believes them to be false.

4. As to any other allegations in the Respondent's Answering Briefs to which Mr Thompson has not responded, Petitioner denies the truth of the

(1)

allegation.

5. And, further replying to said Affidavit In Opposition To Petition For A Writ Of Habeas Corpus, Garnell Thompson objects to Respondent's mischaracterization of his supplemental pleading pertaining to Prosecution's fabrication of Confidential informant in Criminal Arraignment Court in order to deprive Petitioner of life, liberty and property without Due Process of Law. U.S. Const. 14th Amendment.

6. The Respondent's contention that Shiquon Alston is the Confidentially named informant who is referred to in the felony Complaint as the person who "observed" Thompson shoot decedent with a handgun" is unsupported by the record and vests on thin air [DD5 #28 ___], [Supporting Deposition___].

7. Here, on two occasions the Respondent has admitted that Mr. Alston did not see the actual shooting. First, at trial in State Court upon inquiry made by Nisi Prius Court:

THE COURT: Can I see the file?

MR. HALE: Mr. Chaikin, in terms of asking for names and addresses with regard to DD-5's that are the Benitez brothers, <u>the Benitez brothers were the witnesses who saw the occurrence</u>, <u>but did not identify in the photographic array</u>. [Opening-Prosecution, at 291] (Emphasis supplied)

Second, the Respondent conceded in his Affidavit In Opposition To Petition For A Writ Of Habeas Corpus that Alston did not see Thompson commit the homicide: "Alston did not see defendant actually pull the trigger" [Affidavit In opposition dated March 30, 2012, Page 10, Footnote #2]

8. Nevertheless, the Respondent when opposing Thompson's claim that the Prosecution had fabricated a Confidential informant who purportedly formed the legal basis for his arrest upon the Second Degree Murder charge, furnished false statements, which led Trial Court to believe that Alston

(2)

"observed" Thompson shoot decedent with a "handgun" and later identified Petitioner to the Detective who filed the felony Complaint in Criminal Court: "the defendant was arrested based on Shiquon Alston's Statement to the Police. Alston, an eyewitness to the shooting, testified at trial and was subject to cross-examination by the defendant." [See — Respondent's Affirmation In Opposition Of CPL 440.10 Motion, dated 2-16-2006] (Emphasis added).

9. Moreover, the Respondent knowingly furnished false statements in his Affidavit In Opposition To Mr. Thompson's Habeas Corpus Petition pertaining to Petitioner's claim that the Prosecution fabricated a Confidentially Named identification witness:
"defendant's assertion that the Prosecution had manufactured a Confidential informant was mistaken — the Confidential informant was Alston, an eyewitness to the shooting who testified at trial" [See Affidavit dated 6-23-2010, Page 3, at 9]

10. The record doesn't lie, the arresting officer who furnished the felony complaint testified at the PreTrial Suppression Hearing, that Alston had not claimed he saw the actual shooting:
Q And he didn't see the shooting, is that correct?
A That's Correct.

More so even, upon being called to testify at trial by the Prosecution, Mr. Alston did not claim he knew what happened with Thompson, Feliciano, or anybody else at the scene of the incident:
Q. Sir, at that time, did you know what happened with the defendant and Julissa or anybody else in the Park?
A. Nope. [Trial Record, at 53].

In addition, Contrary to Respondent's assertion that Alston actually saw Thompson with a gun during the Confrontation, the witness testified that he saw a "handle":

Q But you did say -- didn't you also say -- Correct me if I'm mistaken -- that all you saw was the handle and then you ran?
A I said I saw the handle, that's when I knew he had a gun, and that's when I saw it was a revolver.
Q Oh, so you knew it was a revolver from the handle?
A Yes. [Trial Record, at 91]

Notably, at Charge Conference the Respondent agreed with the Trial Court, that the Second Degree and Third Degree Weapons Charges contained in the indictment should not be submitted to the jury for its deliberations.

11. Undoubtedly, the Respondent has abandoned his duty to provide true and accurate Statements regarding material facts related to Thompson's factual allegations regarding the State's fabrication of identification evidence in Criminal Arraignment Court. Definitely, the Respondent knew or should have known after a reasonable inquiry, that the Statements attributed to the Confidentially Named informant in the felony Complaint could not be Properly attributed to Mr. Alston.

12. The rule of law is well established:

Under Rule 11 of the Federal Rules of Civil Procedure, the Signer is required to Certify that to the best of the Signer's knowledge, information, and belief formed after an inquiry reasonable under the Circumstances that the denials of factual contentions are warranted on the evidence. See: F.R.C.P. Rule 11 (b) (4).

13. Equally well known is that a Prosecutor has a duty to correct what he knows to be false. See People v. Savvides, 1 NY2d 554, 557,

(4)

holding:

"It is of no consequences that the falsehood bore upon the defendant's guilt. A lie is a lie, no matter what it's subject, and if it is in any way relevant to the case, the District Attorney has the responsibility and duty to correct what he or she knows in this case to be false and elicit the truth *** Napue v. People of The State of Illinois, 79 S.Ct. 1177 N.[3] and at U.S. 260-270; Also See, Mooney v. Holohan, 294 U.S. 103, 56 S.Ct. 14. Without doubt, "if it is established that the Supreme Court of the U.S. knowingly permitted the introduction of false testimony reversal is virtually automatic." This then is the "clearly established federal law as determined by the Supreme Court of the United States," 28 U.S.C. § 2254 (d)(1) (Quoting, Jenkins v. Antuz, 294 F.3d 284, 296 N.2 (2d Cir. 2002) (Noting the duty of Prosecutor under New York law 'to seek justice, not merely to convict,"); Also see Giglio v. U.S., 405 U.S. 150, 154, 92 S.Ct. 763, and its progeny.

15. Under New York case law it is well established that known use of false testimony by police to secure conviction is attributed to the prosecution. See People v. Roberts, 12 NY 2d at 359, 360, 239 NYS 26, 673, holding (Known use of false testimony by police to secure conviction is attributed to the prosecution team).

16. Mr. Thompson's moving papers provides strong examples of Respondent's knowing use of false evidence ("testimony"), which the Respondent has utterly failed to controvert [___].

17. Equally important, no deference is owed to State Court's erroneous ruling upon Thompson's CPL 440.10 Motion hereinmention. The Trial Court's decision was based on an objectively unreasonable determination of the

(5)

facts in light of the evidence presented in the State Court Proceedings. The Court below overlooked the Respondent omitting to submit documentary proof, which would have conclusively refuted Thompson's claim that the Prosecution violated his Fourteenth Amendment Right by fabricating an informant, who purportedly pointed to Petitioner's guilt. Moreover, the Trial Court failed to recognize that Respondent's claim that Alston was confidentially Named informant who told detective Griffin, that he "observed" Thompson shoot decedent with a "handgun" was not supported by the record [ _ ].

18. Under 28 U.S.C. § 2254(d), a federal Court cannot vacate a State conviction unless the challenged State Court decision was either (1) "Contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States; or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State Court Proceedings." Obviously, where the State Court's legal error infects the fact-finding process, the resulting factual determination will be unreasonable and no presumption of correctness can attach to it. Likewise, where the State Court plainly misapprehend and/or misstate the record in making their findings, and the misapprehension goes to a material factual issue that is central to Petitioner's claim, that misapprehension can fatally undermine the fact-finding process, rendering the resulting factual findings unreasonable. See: Miller-El v. Cockrell, 537 US 322 (2003).

19. Furthermore, Trial Court's reliance upon CPL 440.10 procedural bars to deny Thompson's Fourteenth Amendment claim was an exorbitant application of the rule, and should be deemed null and void.

20. Under these circumstances, Thompson should not be faulted for defense counsel's unprofessional errors. Clearly, had counsel made appropriate challenge to Prosecution's claimed identification evidence contained in the

(6)

felony complaint, it would have yield a different result, because the PreTrial Court would have ordered that the Respondent produce Alston at a "Darden Hearing" for in camera interrogation to determine first if the Confidentially named informant existed; and second if Mr. Alston corroborated detective Griffin's claim in the sworn instrument, that Alston told the detective that he "observed" Thompson shoot Feliciano with a "handgun". Upon being called to testify at the hearing, Shiquon Alston would not have corroborated Griffin's sworn narrative pertaining to the legal basis for his arrest of Thompson on the intentional Murder charge. Since, as the Respondent now admits "Alston did not see defendant actually pull the trigger". The Court would have been obliged to terminate the prosecution against Thompson and it would have been of no moment that the prosecutor was able to obtain an indictment prior to the hearing. The Trial Court would have loss jurisdiction over Thompson and the felony matter. The State Court would have released Mr. Thompson unconditionally.

21. In this legal dispute, if the district court refused to consider Thompson's sixth and Fourteenth Amendment claims due to a procedural bar it would result in a fundamental miscarriage of justice.

22. The Respondent acting as a fact witness has engaged in pervasive and egregious misconduct by furnishing false statements and using misleading tactics. The evidence is clear and convincing: First when opposing Thompson's CPL 440.10 Motion, the Respondent misrepresented Alston as the witness to the actual shooting "Alston, an eyewitness to the shooting" [Affirmation In Opposition, dated 2-16-2006]. Next, when Respondent opposed Mr. Thompson's habeas petition, "the Confidential informant was Alston, an eyewitness to the shooting" [Affidavit dated 6-23-2010, Page 3, at 9]. In contrast, Now in opposition of Thompson's Supplemental Pleadings the Respondent has taken a Contrary position regarding

(7)

whether Shiquon Alston saw the actual shooting, "Alston did not see defendant actually pull the trigger" [Affidavit dated March 30, 2012] (Page #10, FootNote #2). Respondent's knowing use of false statements and misleading tactics in State Court deprived Thompson of relief in State Court upon his Fourteenth Amendment claim.

23. On the other hand, Respondent's claim that Thompson's ineffective assistance claim is not reviewable in district court as a result of defendant's failure to exhaust said claim in State Court should be unavailing, because as the Respondent pointed out in his Affidavit by an operation of law the Court below can not review the Sixth Amendment claim. Thus, it would be an act in futility for Mr. Thompson to present the claim to the Nisi Prius Court now.

24. As this Court knows exhaustion is unnecessary where there is either an absence of available State corrective process or the existence of circumstances, such as futility or inordinate delay, rendering such process ineffective. Duckworth v. Serrano, 454 U.S. 1, 3-4, 102 S.Ct. 18, 70 L.Ed. 2d 1 (1981).

25. Thompson's Constitutional claims which present federal questions of law are cognizable on habeas review, See Brown v. Allen, 344 U.S. 443, 73 S.Ct. 397, 97 L.Ed. 469 (1953) (holding, inter alia, that all federal constitutional questions that have been incorporated through the Fourteenth Amendment Due Process Clause and thereby made applicable to the States are cognizable on federal habeas corpus, even if the claims had been fully and fairly adjudicated in the State Courts; recognizing federal habeas corpus as "[a] way... to redress violations of the Constitution," at 464 (citing Moore v. Dempsey), and acknowledging "the power of federal district courts to protect the Constitutional rights of State

(8)

Prisoners after the exhaustion of State remedies," at 478 (same)).
WHEREFORE, said Garnell Thompson prays that said Writ be sustained and that he be unconditionally discharged immediately.

*Garnell Thompson*

Garnell. Thompson,
Pro Se
Clinton Corr. Fac.
P.O. Box 2000,
Dannemora, N.Y. 12929

I declare under Penalty of Perjury that the foregoing is true and correct. Executed on April 5th, 2012.

(9)