UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
GARNELL THOMPSON,

                Petitioner,

      -against-

DALE ARTUS,

                Respondent.
-----------------------------------------------------------X

NOT FOR PUBLICATION
**MEMORANDUM & ORDER**
10-cv-1443 (CBA)

**FILED**
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ DEC 6 - 2013 ★
**BROOKLYN OFFICE**

**AMON, Chief United States District Judge.**

      Petitioner Garnell Thompson, pro se, brings this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 seeking to vacate his conviction for murder in the second degree, N.Y. Penal Law § 125.25(1), entered in New York state court after a jury trial on October 27, 2005.[1] Thompson advances each ground for relief raised on direct appeal and in four separate collateral attacks in New York state court. On June 6, 2013, Thompson moved to amend his petition to exclude all unexhausted claims. For the reasons set forth below, the Court grants Thompson's motion to amend and denies his petition.

## BACKGROUND

### I.    The Crime and Prosecution

      At 1:30 a.m. on August 16, 2003, Yvonne Julissa Feliciano was shot and killed in Irving Square Park in the Bushwick neighborhood of Brooklyn. The medical examiner's report revealed that Feliciano suffered nine gunshot wounds from bullets to the head, neck, arm, and torso. (Trial Tr. at 164, 171, 176.) Thompson, Feliciano's ex-boyfriend, was identified as the shooter by Shiquon Alston, Feliciano's former neighbor. Thompson was charged with one count of murder

---

[1] Although the Court received the petition on March 29, 2010, Thompson claims to have submitted it to prison authorities on November 17, 2009.

in the second degree, N.Y. Penal Law § 125.25(1) (intentional murder), one count of criminal possession of a weapon in the second degree (former N.Y. Pen. Law § 265.03(2)), and one count of criminal possession of a weapon in the third degree (former N.Y. Pen. Law § 265.02(4)).

Thompson was tried in Kings County Supreme Court in October 2005. On October 6 and 11, the court held a pre-trial hearing pursuant to United States v. Wade, 388 U.S. 218 (1967), upon Thompson's motion challenging the state's identification evidence. The motion was denied.[2] (Oct. 11, 2005 Tr. at 64.) At the hearing, defense counsel also requested disclosure of unredacted copies of police reports known as "complaint follow-up" or "DD-5" forms. (Oct. 6, 2005 Tr. at 2-9.) Counsel had previously been provided copies from which names and other personal information had been redacted. He argued that the DD-5s suggested that Feliciano owed money to several individuals and had stolen money from someone who was going to pay $10,000 to have her killed. (Id. at 8.) The DD-5s also indicated that a Janice Escuza admitted to receiving $300 to help the hit man locate Feliciano. (Id. at 6.) Although defense counsel did not contend that the unredacted DD-5 forms constituted exculpatory material subject to mandatory disclosure under Brady v. Maryland, 373 U.S. 83 (1963), the prosecutor agreed to provide the unredacted DD-5s the following day. (Id. at 8-9.)

Trial commenced on October 18, 2005. Defense counsel acknowledged he had received the unredacted DD-5s (id. at 231-32), but argued that he was unable to locate several witnesses referenced in the DD-5s due to the late provision of the unredacted forms. Counsel requested, as a remedy for the delayed disclosure, permission to question police witnesses about the statements in the DD-5s related to the alternative kill-for-hire theory. The trial court denied the requests, finding the statements in the forms inconsistent and unreliable and the theory speculative. (Oct.

---

[2] At the October 6 and 11, 2005 hearing, the trial court also rejected Thompson's argument that there was no probable cause for his arrest, which Thompson raised pursuant to Dunaway v. New York, 442 U.S. 200 (1979).

2

17, 2005 Voir Dire Tr. at 227-256; Oct. 18, 2005 Tr. at 258-64; Trial Tr. at 12-24, 100, 178-84, 288-300, 504, 517-19.)

At trial, Shiquon Alston testified that he saw Feliciano, his former neighbor, sitting on a bench in the park shortly before the shooting. (Trial Tr. at 38-39.) He testified that Feliciano told him that she felt uncomfortable and believed she was being stalked. (Id. at 45-47.) Thompson subsequently arrived at the park and Feliciano identified him as the stalker. (Id. at 46, 100.) Alston described him as a heavyset male with a "lazy" right eye, wearing a green jersey with the number "34" on it and his hair in braids. (Id. at 49.) Alston testified that Thompson approached Alston and Feliciano until he was "face-to-face" with Alston, told Alston to leave, and then pulled a revolver out of a black plastic bag. (Id. at 46-48, 50-51, 72.) When Alston saw the gun, he fled the scene. (Id. at 46, 51, 58, 91, 95.) Alston testified that he heard five to six shots (id. at 51), but did not look back. (Id. at 52-53, 95.)

The prosecution also offered the testimony of Alexis Benitez. Benitez and his brother were walking by the park when Benitez heard a gunshot. (Id. at 274.) He looked toward the benches in the park and saw one of two individuals standing about two to three feet apart from each other fall to the ground. (Id. at 274-75, 277-78.) After the person fell, the shooter leaned over the fallen body and fired another five or six shots. (Id. at 274, 277.) Although he did not see the shooter's face, Benitez described the shooter as a tall, husky black male with braids and a green jersey with "34 Pierce" on the back. (Id. at 275, 282-83.) Benitez testified that the shooter had a black plastic bag in his hand and ran out of the park after the shooting. (Id. at 278-79.)

Irene Torres, Feliciano's cousin, testified that in June or July of 2003, Thompson told her that he and Feliciano had just gotten into an argument, that he was "fed up with her shit," and that he was "going to put it on her." (Id. at 189-90, 203.) In response to questioning by Justice

3

Anne Feldman, the presiding trial judge, Torres further testified that her mother and Feliciano's aunt, Iris Velasquez, told her that Feliciano had said that if anything were to happen to her, Thompson was responsible. (Id. at 205-06.)

Iris Velasquez also testified that days before Feliciano's death, Thompson stated that he was going to "put a cap on" Feliciano. (Id. at 229-231.) She testified that Thompson frequently visited her home because he was close friends with her husband (id. at 221-22), that she saw Thompson on multiple occasions on the evening of the shooting wearing a green jersey with the number 34 on it, that she saw Thompson wearing the same jersey at about 12:40 a.m., and that at that time Thompson told her he was going to the store. (Id. at 232-33, 238, 250, 265.) According to Velasquez, Thompson arrived at her house at about 2:00 a.m. wearing a white t-shirt and green or gray sweatpants and asked for her husband. (Id. at 250-51, 260.) Thompson was sweating and acting strangely. (Id. at 251, 261, 263.) Velasquez testified that Thompson told her husband that he was leaving town at 5:00 a.m. to see his daughter. (Id. at 263.) Velasquez testified that she did not see or hear from Thompson after that and that he did not attend Feliciano's funeral. (Id. at 252-53.) A representative of the New York State Department of Labor testified that Thompson stopped claiming his remaining unemployment checks after the murder. (Id. at 374-76.) The lead investigator on the murder case, Detective James Griffin, testified that beginning August 17, 2003, he searched for Thompson "every single day" but was unable to track him down until May 2004. (Id. at 314-17.)

On summation, defense counsel argued that Thompson was not the shooter. (Id. at 392-95.) The state countered that of the "field of people" who could have committed the murder, Thompson was the person with a strong personal motive for harming Feliciano. (Id. at 463-67.) Following summations, defense counsel objected to the argument in light of the statements in the

4

DD-5 forms. (Id. at 504-06.) The court declined to give a corrective instruction. (Id. at 517-19.) On October 27, 2005, the jury convicted Thompson of intentional murder in the second degree. (Id. at 556-58.) Justice Feldman sentenced Thompson to a term of imprisonment of 25 years to life on November 15, 2005. (Sent. Tr. at 10.)

## II.    Direct Appeal

On direct review, Thompson, through counsel, argued that he was denied a fair trial due to (1) the trial court's refusal to allow evidence of alternative suspects in the DD-5 forms as a remedy for the state's delay in disclosing the unredacted forms; and (2) the trial court's elicitation from Torres the hearsay evidence that prior to her death, Feliciano told Velasquez that if she was murdered, Thompson was the culprit. (App. Br., D.E. # 10-19 at 2.) Thompson also filed a supplemental pro se brief raising an additional five claims of error. He argued (1) that the trial court erred when it did not dismiss the murder count after dismissing the weapons counts; (2) that the prosecutor knowingly presented false testimony and that the trial court "took no measures to cure" the prosecutorial misconduct; (3) that the prosecutor improperly introduced hearsay evidence; (4) that the verdict was legally insufficient because the trial testimony of Detective James Griffin and Crime Scene Unit Detective Joseph Bello created "false impressions of material fact"; and (5) that the state violated Brady by failing to disclose prior to Thompson's Wade hearing that Alston described the shooter as having a "lazy" right eye, which he claimed precluded the defense from arguing that the identification procedures were unduly suggestive because Thompson has a lazy left eye. (See Supp. App. Br., D.E. # 10-12 at 3.)

The Appellate Division unanimously affirmed the conviction. It rejected on the merits Thompson's claim that he was prevented from presenting a defense by delayed disclosure of the unredacted DD-5 forms and that the trial court excessively interfered with the proceedings by

5

eliciting hearsay. <u>People v. Thompson</u>, 54 A.D.3d 975, 975-76 (2d Dep't 2008). The court also found that, to the extent Thompson was contending that the DD-5s could have been used to attack the thoroughness of the state's case, the argument was not raised to the trial court and therefore unpreserved for appellate review. <u>Id.</u> at 976.

Relying on New York's contemporaneous objection rule, N.Y. Crim. Proc. Law § 470.05(2), the Appellate Division found each of the arguments raised in Thompson's supplemental brief to be unpreserved and, in any event, without merit. <u>Id.</u> at 975-76. The court also specifically found the evidence legally sufficient to establish Thompson's guilt and exercised its factual review power under N.Y. Crim. Proc. Law § 470.15 to hold the verdict not against the weight of the evidence. <u>Id.</u> at 975. On November 21, 2008, the New York Court of Appeals denied leave to appeal. <u>People v. Thompson</u>, 11 N.Y.3d 858 (2008).

### III.    Collateral Attack

On December 2, 2005, prior to the filing of his direct appeal, Thompson brought his first <u>pro se</u> motion to set aside his conviction pursuant to N.Y. Crim. Proc. Law § 440.10. In its opposition papers, respondent discerned the following six claims from Thompson's long and often unclear papers in support of this motion: (1) that the prosecution failed to inform him that the medical examiner's report, which indicated that Feliciano sustained nine bullet wounds, contradicted testimony by Benitez and Alston that only five to six shots were fired; (2) that several of the state's witnesses gave testimony that was false or inconsistent with prior statements; (3) that the photographic array and line-up were unduly suggestive due to Thompson's lazy eye; (4) that the prosecutor's summation contained inaccuracies; (5) that Thompson did not receive the transcript of a hearing on September 7, 2004; and (6) that the New York Police Department and Dis-

6

trict Attorney fabricated a confidential informant to establish probable cause to detain Thompson pending grand jury action. (Resp. Mem. in Opp., D.E. # 10-13 at 1-2.)

As Thompson had not yet filed his direct appeal, the People argued that the first five claims were procedurally barred by N.Y. Crim. Proc. Law § 440.10(2)(b), which requires dismissal of claims in a § 440.10 motion where the judgment is appealable or pending on appeal and sufficient facts appear on the record to permit appellate review of the claims. (Id. at 2-3.) Respondent further contended that the fifth claim did not attack the conviction and so was not grounds for relief under § 440.10 and that the sixth claim lacked merit because Alston was the confidential informant. Id. Justice Feldman denied the motion "for the reasons set forth in the People's papers in opposition." People v. Thompson, No. 3289/2004, slip op. (N.Y. Sup. Ct. Apr. 3, 2006).

On December 18, 2008, Thompson brought his second pro se § 440.10 motion. Thompson alleged that Justice Feldman and three other New York Supreme Court judges who had presided over Thompson's pre-trial proceedings lacked jurisdiction because they allegedly failed to file their oaths of judicial office with the county clerk. The second motion to vacate was denied on its merits. People v. Thompson, No. 3289/2004, slip op. (N.Y. Sup. Ct. May 21, 2009) (Tomei, J.).[3]

On May 5, 2009, Thompson filed a petition for a writ of error coram nobis before the Appellate Division, Second Department. Thompson alleged that appellate counsel was ineffective for (1) failing to argue that trial counsel was ineffective for not objecting to the introduction of hearsay, and (2) failing to argue that the trial court improperly submitted the murder count to

---

[3] In the second § 440.10 motion, Thompson reiterated the arguments in his first § 440.10 motion that he was improperly arraigned upon a faulty felony complaint and that the arraignment court failed to give him a preliminary hearing. The second motion court also did not address these allegations in its Decision & Order.

the jury after dismissing the weapons counts. The Appellate Division denied the motion on the merits on September 22, 2009, People v. Thompson, 65 A.D.3d 1265 (2d Dep't 2009), and the Court of Appeals denied leave to appeal on March 18, 2010, 14 N.Y.3d 806 (2010).

Finally, on June 23, 2009, Thompson brought a third pro se § 440.10 motion to vacate. In this motion, he reiterated his claim, raised in the first § 440.10 motion but not explicitly addressed by the motion court, that the state failed to timely comply with the notice requirements for introducing identification testimony set forth in N.Y. Crim. Proc. Law § 710.30(1)(b). He also argued that trial counsel was ineffective for failing to move to preclude identification testimony due to the state's alleged noncompliance with § 710.30(1)(b) and failing to object to the state's introduction of hearsay evidence. The court found each claim procedurally barred for failure to raise on direct review. People v. Thompson, No. 3289-04, slip op. (N.Y. Sup. Ct. Aug. 25, 2009). Both the Appellate Division and the Court of Appeals, 14 N.Y.3d 893 (2010), denied leave to appeal.

## DISCUSSION

Thompson's habeas petition challenges the denial of each claim raised in state court. In a supplemental submission filed February 28, 2011, Thompson added the additional claim that trial counsel was ineffective for failing to investigate and object to the felony complaint's reliance on an allegedly fabricated "confidential informant" who identified Thompson as the shooter. On June 1, 2012, Thompson sought a stay of his habeas proceedings to allow exhaustion of this claim, which he had raised in a fourth § 440.10 proceeding subsequent to filing the instant habeas petition. On March 28, 2013, this Court denied the stay because Thompson failed to show good cause for his failure to exhaust the claim and because the underlying claim was meritless. (See March 28 Order, D.E. # 27.) On June 6, 2013, Thompson moved to amend his petition to

8

withdraw any unexhausted claims. The Court grants Thompson's motion to amend and will deem his unexhausted claim of ineffective assistance of trial counsel withdrawn.

For the reasons set forth below, Thompson's habeas petition is denied.

## I.    Procedural Default

As an initial matter, many of Thompson's claims are procedurally defaulted. A federal habeas court "will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment." Coleman v. Thompson, 501 U.S. 722, 729 (1991). Where a state court rejects a claim based on the petitioner's failure to comply with a state procedural rule, the procedural default may constitute an independent and adequate ground for the state court's decision, thus barring federal habeas review. See id. at 729-30, 749-50. A determination that a claim is unpreserved is a sufficient indication that the state court denied the claim on state procedural grounds. See Green v. Travis, 414 F.3d 288, 294 (2d Cir. 2005).

### A.    Failure to Comply with New York Contemporaneous Objection Rule

On direct appeal, the Appellate Division denied as unpreserved for appellate review each of the claims Thompson raised in his supplemental pro se brief: (1) that the trial court erred in refusing to dismiss the murder count after dismissing the weapons counts; (2) that the prosecutor knowingly presented false testimony; (3) that the prosecutor improperly introduced hearsay evidence; (4) that the testimony of Detectives Griffin and Bello was incredible and created "false impressions of material fact;"[4] and (5) that the prosecutor violated Brady by failing to disclose to

---

[4] The Appellate Division also found that to the extent Thompson was arguing that the evidence against him was insufficient to sustain his conviction as a matter of law because the testimony of Detectives Griffin and Bello was incredible, the claim was unpreserved for failure to comply with the contemporaneous objection rule, and in any event, meritless. Thompson, 54 A.D.3d at 975. The Appellate Division went on to hold generally that the evidence was legally sufficient to establish Thompson's guilt beyond a reasonable doubt. Id. To the extent Thompson intends to raise a general sufficiency of the evidence claim in

9

the defense prior to Thompson's <u>Wade</u> hearing that Alston described the shooter as having a "lazy" right eye. <u>Thompson</u>, 54 A.D.3d at 976. The Appellate Division similarly found any claim that Thompson was denied the ability to attack the thoroughness of the prosecution's case due to delayed disclosure of the unredacted DD-5 forms to be unpreserved. <u>Id.</u>

Ordinarily, "an adequate and independent finding of procedural default will bar federal habeas review of the federal claim." <u>Harris v. Reed</u>, 489 U.S. 255, 262 (1989). In finding these claims unpreserved, the Appellate Division relied upon New York's contemporaneous objection rule, N.Y. Crim. Proc. Law § 470.05(2), which has long been considered such an "adequate and independent ground." <u>See Whitley v. Ercole</u>, 642 F.3d 278, 292 (2d Cir. 2011). New York's rule requires that an alleged error be "brought to the attention of the trial court at a time and in a way that [gives it] the opportunity to remedy the problem and thereby avert reversible error." <u>People v. Luperon</u>, 85 N.Y.2d 71, 78 (1995). As trial counsel never raised these claims before the trial court, the Appellate Division properly applied New York's adequate and independent contemporaneous objection rule.[5]

---

the instant petition, this Court would reject it as procedurally barred and, in the alternative, on the merits. A federal habeas court assessing a challenge to the sufficiency of the trial evidence views all evidence in the light most favorable to the prosecution, <u>Jackson v. Virginia</u>, 443 U.S. 307, 319, 326 (1979), and will grant relief only if "no rational trier of fact could have found proof of guilt beyond a reasonable doubt," <u>id.</u> at 324. Given the ample evidence of Thompson's guilt, the Appellate Division's holding was neither contrary to, nor an unreasonable application of, clearly established federal law.

[5] At trial, Thompson's counsel argued that he had received no indication prior to Alston's trial testimony that Alston had identified the shooter as having a lazy right eye and requested a stipulation that Thompson's lazy eye is his left, but did not claim that it violated <u>Brady</u> or prejudiced the outcome of the <u>Wade</u> hearing. (Trial Tr. at 62-65, 179, 292-93, 305, 383-84, 450.) Rather, counsel argued that because both Alston and Velasquez misidentified Thompson's lazy eye as his right, Alston must have fabricated that the shooter had this trait during trial to bolster his credibility after learning of Thompson's lazy eye from Velasquez. (<u>Id.</u> at 449-53.) Counsel did not move to suppress the identification or request a corrective instruction on grounds that the photo array and line-up were unduly suggestive. Thus, counsel did not bring the particular claim to the "attention of the trial court at a time and in a way that gave [it] the opportunity to remedy the problem," and the Appellate Division's invocation of the contemporaneous objection rule was an adequate state law ground. <u>Luperon</u>, 85 N.Y.2d at 78; <u>see also Ranta v. Bennett</u>, No. 97-cv-2169 (ERK), 2000 WL 1100082, at *34-35 (E.D.N.Y. May 23, 2000) (applying contemporaneous objec-

To permit review by this Court, Thompson must demonstrate either "cause for the procedural default and prejudice resulting therefrom," Grey v. Hoke, 933 F.2d 117, 121 (2d Cir. 1991), or "that he is actually innocent of the crime for which he has been convicted," Dunham v. Travis, 313 F.3d 724, 730 (2d Cir. 2002). Thompson contends that trial counsel's failure to comply with the contemporaneous objection rule amounted to ineffective assistance of counsel, and that this constitutes cause for his procedural default. (Pet. Mem. of Law, D.E. #12 at 41.) Although ineffective assistance of counsel may establish cause, "[a]ttorney error short of ineffective assistance of counsel" does not. Murray v. Carrier, 477 U.S. 478, 492 (1986). Moreover, it is well settled that "the exhaustion doctrine . . . generally requires that a claim of ineffective assistance be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default." Murray, 477 U.S. at 488-89. Thompson exhausted his claim that trial counsel was ineffective for failing to object to the introduction of hearsay evidence, but not for failing to raise any of the other claims of error found to be procedurally barred. He is therefore precluded from relying on ineffective assistance of counsel to establish cause with respect to these claims. See Zelaya v. Mantello, No. 00 Civ. 0865, 2003 WL 22097510, at *5 (S.D.N.Y. Sept. 10, 2003) ("[Petitioner] did not raise any claim of ineffective assistance of counsel on his direct appeal, and he has not brought a § 440.10 motion to attack his conviction on that ground. Therefore, [petitioner's] ineffective assistance of counsel claim remains unexhausted and may not be used to establish cause for the procedural default of his underlying claim." (internal citations omitted)).

As set forth further below, Thompson's claim that trial counsel was ineffective for failing to object to the admission of hearsay evidence is itself procedurally defaulted and, in any event,

tion rule where counsel failed to explicitly invoke Brady or request a remedy for the claimed violation and collecting cases).

without merit. Thompson therefore cannot establish cause for failing to contemporaneously object to the admission of hearsay testimony by claiming ineffective assistance of counsel. Thompson has not advanced any other basis to find cause for his procedural default. Nor can he establish that the Court's failure to consider these claims will result in a fundamental miscarriage of justice. The overwhelming evidence of guilt adduced at trial forecloses the conclusion that Thompson is factually innocent of intentional murder. The claims found unpreserved on direct appeal are barred from habeas review.[6]

### B.    Failure to Raise Claims on Direct Appeal

#### 1.    C.P.L. § 440.10(2)(b)

Thompson challenges the denial in state court of his claims that (1) the prosecution failed to disclose findings in the medical examiner's report that contradicted a witness's testimony; (2) several witnesses gave conflicting or false testimony; (3) the identification procedures were unduly suggestive; (4) the prosecutor's summation contained inaccuracies; and (5) he was not provided a copy of a hearing transcript. Each of these claims was raised to the court considering his first § 440.10 motion. The court denied them as procedurally barred by N.Y. Crim. Proc. Law § 440.10(2)(b) because the claims were apparent from the face of the record and could be brought on direct appeal, which, at the time Thompson filed the first § 440.10 motion, had not yet been filed.

Procedural default under § 440.10(2) is generally considered an adequate and independent state ground barring habeas review. Sweet v. Bennett, 353 F.3d 135, 139-41 (2d Cir. 2003); Clark v. Perez, 510 F.3d 382, 391 (2d Cir. 2008). Thompson claims that the motion court's "re-

---

[6] That the Appellate Division also decided these claims on its merits does not change the result. See Galdamez v. Keane, 394 F.3d 68, 77 (2d Cir. 2005) ("[W]here a state court explicitly says that a particular claims fails for a procedural reason, but still reaches the merits, that claim remains procedurally barred."); Fama v. Comm'r of Corr. Servs., 235 F.3d 804, 810 n.4 (2d Cir. 2000).

liance upon CPL 440.10 procedural bars . . . was an exorbitant application of the rule." (Pet. Mem. of Law, D.E. #12 at 17.) The Supreme Court has recognized that there are "exceptional cases in which exorbitant application of a generally sound rule renders the state ground inadequate." Lee v. Kemna, 534 U.S. 362, 376 (2002); see also Cotto v. Herbert, 331 F.3d 217, 240 (2d Cir. 2003). However, this narrow exception does not apply to a state court's application of § 440.10(2) where, as here, the petitioner's failure to raise a claim on direct review is unjustified because the bases for relief are plain from the trial record, the petitioner understands his right to appeal, and the petitioner has legal representation on appeal. Clark, 510 F.3d at 392-93; Blount v. Napoli, No. 09-cv-4526 (KAM), 2012 WL 4755364, at *17-18 (E.D.N.Y. Oct. 5, 2012). The motion court's invocation of § 440.10(2) was an adequate and independent state law ground. As Thompson advances no cause for defaulting on the five barred claims and cannot establish actual innocence, the claims are denied.

### 2. C.P.L. § 440.10(2)(c)

Thompson argues that his trial counsel was ineffective for (1) failing to object to the state's introduction of hearsay evidence; and (2) failing to move to preclude identification testimony on grounds that the state did not comply with N.Y. Crim. Proc. Law § 710.30(1)(b). These claims were denied as procedurally barred by the third § 440.10 motion court pursuant to N.Y. Crim. Proc. Law § 440.10(2)(c), which, similar to its counterpart in § 440.10(2)(b), requires courts to deny a claim in a § 440.10 motion that the petitioner unjustifiably failed to raise in his already perfected appeal.[7] See Aparicio v. Artuz, 269 F.3d 78, 91 (2d Cir. 2001) ("New York does not . . . permit collateral attacks on a conviction when the defendant unjustifiably failed to raise the issue on direct review."). Claims of ineffective assistance of counsel that are "well-

---

[7] The court also found the latter ineffective assistance claim to lack merit. Again, this alternative holding does not alter the determination that the claim is procedurally barred. Fama, 235 F.3d at 810 n.4.

established in the trial record" are subject to § 440.10(2)(c)'s mandatory waiver provision. Sweet, 353 F.3d at 139-40.

Thompson again claims that the motion court's reliance on N.Y. Crim. Proc. Law § 440.10(2) was "exorbitant," reasoning that he should not be held accountable for trial counsel's errors. (Pet. Mem. of Law, D.E. #12-2 at 7.) For the same reasons stated above, this argument fails. Trial counsel's objections to the state's introduction of hearsay evidence and compliance with N.Y Crim. Proc. Law § 710.30(1)(b) is evident from the face of the record, and Thompson specifically challenged the underlying admission of hearsay evidence in his direct appeal. Thompson also mentioned the state's alleged failure to comply with § 710.30(1)(b) in his papers in support of the first § 440.10 motion (Dec. 6, 2005 Aff. at A), which he filed prior to bringing his appeal in 2007. Thompson has demonstrated no cause for his failure to raise the related ineffective assistance claim on direct appeal. Therefore, Thompson's ineffective assistance of trial counsel claims are procedurally defaulted.

In an effort to establish cause for his procedural default, Thompson claims that he received ineffective assistance of appellate counsel. In his petition for a writ of error coram nobis, Thompson exhausted his claim that appellate counsel was ineffective for failing to claim that trial counsel was ineffective for not challenging the state's introduction of hearsay, but not for failing to object under § 710.30(1)(b). He is therefore precluded from relying on ineffective assistance of appellate counsel to establish cause with respect to the latter claim, since that claim is unexhausted. Murray, 477 U.S. at 488-89. As set forth below, the Appellate Division's denial on the merits of the ineffective assistance of appellate counsel claim based on trial counsel's failure to object to hearsay evidence was neither contrary to, nor an unreasonable application of, clearly established federal law. Thompson therefore cannot rely on ineffective assistance of ap-

pellate counsel to establish cause for failing to raise this claim on appeal. Thompson advances no other cause for the procedural default and cannot establish actual innocence. The claims are barred.

## II.    Merits

Having resolved the extent to which Thompson's claims are procedurally barred from federal habeas review, the Court turns to the merits of Thompson's remaining claims.

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court "shall entertain an application for a writ of habeas corpus [on] behalf of a person . . . only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). A district court may grant a habeas petition only where a state court's ruling on the merits was "contrary to, or an unreasonable application of, clearly established Federal law, as determined by the United States Supreme Court," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A state court rules "contrary to" clearly established Supreme Court precedent if it "arrives at a conclusion opposite to that reached by th[e] Court on a question of law or . . . decides a case differently than th[e] Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 412-13 (2000). A state court's ruling is "an unreasonable application" of clearly established Supreme Court precedent if it applied Supreme Court law to the facts of the case in an "objectively unreasonable manner." Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002).

As long as "fairminded jurists could disagree" about whether a state court's denial of a claim on the merits was inconsistent with Supreme Court precedent, federal habeas relief must be denied. Harrington v. Richter, 131 S. Ct. 770, 786 (2011). Stated differently, federal habeas

relief is available only if the state court ruling "was so lacking in justification that there was an error well understood and comprehended in existing [Supreme Court] law beyond any possibility for fairminded disagreement." Harrington, 131 S. Ct. at 786-87.

A.     Denial of Right to Present a Defense by Delayed Disclosure of Brady Material

Thompson alleges that the prosecution's delayed disclosure of the unredacted DD-5 forms violated Brady v. Maryland, 373 U.S. 83 (1963) by preventing the presentation of evidence that another person may have murdered Feliciano. The Appellate Division denied this claim on its merits. Thompson, 54 A.D.3d at 975.

"Under Brady, the State violates a defendant's right to due process if it withholds evidence that is favorable to the defense and material to the defendant's guilt or punishment." Smith v. Cain, 132 S. Ct. 627, 630 (2012); see United States v. Paulino, 445 F.3d 211, 224 (2d Cir. 2006). Suppressed evidence is "material" under Brady "when there is a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different," or, in other words, if the undisclosed evidence "'could reasonably be taken to put the whole case in such a different light as to undermine the confidence in the verdict.'" Cone v. Bell, 556 U.S. 449, 469-70 (2009) (quoting Kyles v. Whitley, 514 U.S. 419, 435 (1995)). "Materiality is assessed in light of the evidence adduced against the defendant at trial; when a conviction is supported by overwhelming evidence of guilt, habeas relief is not warranted." Leka v. Portuondo, 257 F.3d 89, 104 (2d Cir. 2001).

Because the Appellate Division's conclusion that there was no reasonable "possibility" that earlier disclosure of the unredacted DD-5 forms would have altered the verdict constitutes an adjudication on the merits, the state court decision is entitled to AEDPA deference. Sellan v. Kuhlman, 261 F.3d 303, 312 (2d Cir. 2001) (state court need not "explicitly refer to either the

federal claim or to relevant federal case law"). Applying that standard, this Court concludes that the Appellate Division's ruling was not "so lacking in justification" as to warrant federal habeas relief. Harrington, 131 S. Ct. at 786-87. Assuming for present purposes that the unredacted DD-5 forms contained Brady material requiring disclosure, Thompson has not demonstrated that there is a reasonable probability that earlier disclosure would have enabled him to locate Escuza and the other relevant witnesses or that those witnesses would have testified at trial that some other person intended to kill Feliciano. Moreover, the evidence of Thompson's guilt was overwhelming. Eyewitness evidence at trial established that Thompson brandished a gun directly in front of Feliciano and Alston just moments before the fatal shots were fired. Although Alston ran without seeing the shooter pull the trigger, Benitez identified the shooter as standing in the same position towards Feliciano as Thompson, wearing the same braids and green, number 34 jersey that both Alston and Velasquez said Thompson was wearing that night, and holding a black plastic bag. Although evidence that Escuza admitted to accepting $300 to identify Feliciano to a hired hit man supports that someone else also intended to harm her, the evidence does not undercut the ample evidence implicating Thompson in Feliciano's murder.

A fairminded jurist could reasonably conclude that there is no reasonable probability that earlier disclosure of the unredacted DD-5s would have altered the verdict. Contrast Leka, 257 F.3d at 104-07 (finding reasonable probability that suppressed Brady material would have altered the verdict where the sole evidence presented at trial was dubious identification testimony that the Brady material directly controverted.) The Appellate Division's determination was neither contrary to, nor involved an unreasonable application of, clearly established federal law.

To the extent Thompson claims that he was denied due process by the trial judge's refusal to allow defense counsel to introduce the statements in the DD-5 forms through the testi-

17

mony of Detective Griffin (App. Br. at 46, 51), the Court's review is de novo because the Appellate Division did not directly address this argument. Nevertheless, it is without merit. Although "[t]he Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense," Crane v. Kentucky, 476 U.S. 683, 690 (1986) (internal quotation marks omitted), this right is not unlimited. United States v. Scheffer, 523 U.S. 303, 308 (1998). Trial courts enjoy "wide latitude," particularly to "exclude evidence through the application of evidentiary rules that themselves serve the interests of fairness and reliability." Crane, 476 U.S. at 689-90. Thus, where an evidentiary ruling was correct pursuant to a state evidentiary rule, a federal habeas court may reverse only if the rule is "arbitrary or disproportionate to the purposes [it is] designed to serve," meaning that it has "infringed upon a weighty interest of the accused." Scheffer, 523 U.S. at 308, 330; Hawkins v. Costello, 460 F.3d 238, 244-45 (2d Cir. 2006).

The trial court did not err in excluding the statements in the DD-5 forms under New York evidentiary law. The forms contained several accounts by Escuza and other witnesses attesting to Escuza's out-of-court statements which defense counsel intended to offer for the truth of the matters asserted, that is, to prove the alternative kill-for-hire theory. Because these forms contained multiple levels of hearsay, People v. Romero, 78 N.Y.2d 355, 361 (1991), counsel argued that the statements were admissible under New York's exception for statements against penal interest (see, e.g., Oct. 17, 2005 Voir Dire Tr. at 242, 254, 263). Under New York law, for this exception to apply, "supporting circumstances independent of the statement itself must be present to attest to its trustworthiness and reliability." People v. Settles, 46 N.Y.2d 154, 167 (1978). The trial court reviewed the DD-5s and found the various reports contained therein to be internally inconsistent and unreliable. Given this determination, the Court cannot say that her application of New York's hearsay rule was improper. See Rodriguez v. Artus, 123 F. App'x 428 (2d

Cir. 2005) ("Trial judges are afforded considerable discretion in assessing the reliability of hearsay statements offered under a penal-interest exception.").

Moreover, this decision was not unconstitutionally arbitrary or disproportionate to the rule's purposes. Although the Supreme Court has traditionally been "reluctan[t] to impose constitutional constraints on ordinary evidentiary rulings by state trial courts," Crane, 476 U.S. at 689, in Chambers v. Mississippi, the Supreme Court did hold that "mechanistic" application of hearsay rules to preclude evidence of third party culpability may violate due process where the evidence "[bears] persuasive assurances of trustworthiness" and where the declarant is available to be cross-examined at trial. 410 U.S. 284, 300-02 (1973). Here, however, no evidence outside the DD-5 forms corroborated the alternative kill-for-hire theory. The trial court's exclusion of the evidence therefore did not run afoul of Chambers. Given the strength of the evidence inculpating Thompson and the fact that the DD-5s relied on multiple layers of conflicting hearsay, the Court cannot say that the trial court's exclusion of the statements contained in the forms amounted to a violation of Thompson's constitutional rights. See Watson v. Greene, 640 F.3d 501, 511 (2d Cir. 2011). The claim is denied.

B.    Elicitation of Hearsay by the Trial Court

Thompson argues that he was denied his right to a fair trial when the trial court elicited hearsay from Irene Torres, Feliciano's cousin. During Torres's cross-examination, Torres testified that she discussed the case with Feliciano's mother and that she tried "asking her a lot of times, but I would get the same thing that I would always get from her." (Trial Tr. 205.) The trial court then intervened:

> THE COURT:    You would always get what answer?
>
> THE WITNESS:    What came out of my mother's mouth was that she said that Julissa told her that if anything was to ever happen to her, that it was

19

[Thompson].

(Id. at 206.) At this point, defense counsel objected. Justice Feldman overruled the objection and continued:

> THE COURT: Finish again. She said if anything ever happened?

> THE WITNESS: I asked my mother that I went to her about [Thompson], she said that Julissa told her if anything was to ever happen to her, it was [Thompson] who did it.

(Id.). On direct appeal, the Appellate Division rejected on the merits Thompson's claim that the trial court excessively interfered with the proceedings, finding that the "minimal questioning" of Torres did not render the proceedings unfair, and that any hearsay testimony elicited was harmless in light of the "overwhelming evidence" of Thompson's guilt. Thompson, 54 A.D.3d at 976.

Thompson contends that the court "overstepped the bounds of its proper role" by eliciting the hearsay statements from Torres.[8] Although admission of the hearsay testimony was improper, the Court cannot conclude that the error warrants habeas relief. The Second Circuit has made clear that a trial judge's "intervention in the conduct of a criminal trial would have to reach a significant extent and be adverse to the defendant to a substantial degree" to rise to the level of a constitutional violation. Daye v. Attorney Gen. of State of N.Y., 712 F.2d 1566, 1572 (2d Cir. 1983); see Gayle v. Scully, 779 F.2d 802, 813 (2d Cir. 1985) (finding that trial judge's "unwarranted" and "offensive" conduct nevertheless did not constitute a constitutional violation).

Nor does the admission of the hearsay statements themselves provide a basis for granting

---

[8] Thompson also claims, for the first time in his habeas petition, that his "federal constitutional right to confront his accuser was violated by the Trial Court's improper admission of an out of court statement (hearsay) attributed to the deceased." (Pet. Mem. of Law, D.E. #12 at 10.) To the extent Thompson is attempting to raise a Confrontation Clause claim at this late stage, the claim is unexhausted and the Court will deem it withdrawn pursuant to Thompson's motion to amend to withdraw unexhausted claims. Even assuming, however, that Thompson had properly presented this claim, the Court would dismiss it in light of the overwhelming evidence of Thompson's guilt. See United States v. McClain, 377 F.3d 219, 222 (2d Cir. 2004) ("[V]iolations of the Confrontation Clause, if preserved for appellate review, are subject to harmless error review.")

20

Thompson's petition. The Supreme Court has reiterated on multiple occasions that "'federal habeas corpus relief does not lie for errors of state law.'" Swarthout v. Cooke, 131 S. Ct. 859, 861 (2011) (quoting Estelle v. McGuire, 502 U.S. 62, 67 (1991)). "[A] federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." Estelle, 502 U.S. at 68. Habeas relief is appropriate for allegedly erroneous admission of evidence only where its admission violates due process. The admission of evidence violates due process only if the evidence is "sufficiently material to provide the basis for conviction or to remove reasonable doubt that would have existed on the record without it." Dunnigan v. Keane, 137 F.3d 117, 125 (2d Cir. 1998). Courts routinely reject claims where the sum of the evidence of the petitioner's guilt was overwhelming and any error was harmless. See, e.g., Bradford v. Walker, No. 91 CV 0907, 1992 WL 81696, at *3 (E.D.N.Y. Apr. 2, 1992) aff'd, 983 F.2d 1048 (2d Cir. 1992). Given the overwhelming evidence of guilt summarized above, the elicitation of hearsay testimony by the trial court did not violate due process. The denial of this claim was therefore not contrary to, or an unreasonable application of, clearly established federal law.

C.    Fabrication of Informant to Detain Thompson Pending Grand Jury Action

As stated in this Court's order of March 28, 2013 denying Thompson's request for a stay, Thompson's claim that the New York Police Department and District Attorney's office fabricated a confidential informant in the felony complaint in order to detain him pending grand jury action is meritless. (See March 28 Order, D.E. # 27.) Again, federal habeas relief is not available for pure errors of state law, Swarthout, 131 S. Ct. at 861, and courts in this Circuit have held that challenges to state charging instruments are cognizable on habeas review only when they fail to satisfy the basic due process notice requirements of time, place, and the essential elements of the crime. See, e.g., Gathers v. New York, No. 11-cv-1684 (JG), 2012 WL 71844, at *10 (E.D.N.Y.

21

Jan. 10, 2012); Rosas v. Artus, No. 05-cv-8440 (RJS), 2013 WL 499610, at *13 (S.D.N.Y. Jan. 29, 2013). Where, as here, no such claim is made, the claim is not cognizable on habeas review. Gathers, 2012 WL 71844, at *10 ("[f]ederal law does not micromanage the procedures by which states lodge criminal charges"); Chappelle v. Fisher, No. 06-cv-10201 (SHS), 2008 WL 1724185, at *11 (S.D.N.Y. Apr. 10, 2008) ("A question about whether a felony complaint was jurisdictionally defective is only a question of state law.").

In any event, habeas review is not available for purported defects in a felony complaint that have been rendered harmless by a sound superseding indictment and conviction. See Lopez v. Riley, 865 F.2d 30, 32 (2d Cir. 1989) (deficiencies in state grand jury proceedings are not cognizable on habeas review because a "subsequent guilty verdict means not only that there was probable cause to believe that the defendants were guilty as charged, but also that they are in fact guilty as charged beyond a reasonable doubt" (citing United States v. Mechanik, 475 U.S. 66, 70 (1986)); Kevilly v. Connell, No. 06-cv-5672 (JB), 2009 WL 750227, at *6 n.6 (E.D.N.Y. Mar. 19, 2009) (claims of purported defects in a felony complaint are not cognizable on habeas review and collecting cases); Cusamano v. Donelli, No. 06-cv-6047 (PAC), 2010 WL 2653653, at *3 (S.D.N.Y. Jul. 1, 2010) (prosecution and conviction pursuant to a legally sound indictment renders harmless any defect in the criminal complaint). Thompson's felony complaint was superseded by a grand jury indictment. Thompson was convicted after a jury trial at which he was able to cross-examine Alston's identification testimony. The claim is denied.[9]

D.    Presiding Supreme Court Judges Failed to File Oaths of Office

Thompson's claim in his second § 440.10 motion that the New York Supreme Court

---

[9] To the extent Thompson claims that he is entitled to habeas relief because he was illegally detained pending grand jury action, the Court notes that this claim is likewise barred by his subsequent conviction: "[A] conviction will not be vacated on the ground that the defendant was detained pending trial without a determination of probable cause." Gerstein v. Pugh, 420 U.S. 103, 119 (1975); see, e.g., Cusamano, 2010 WL 2653653, at *3.

judges who presided over Thompson's criminal proceedings lacked jurisdiction to do so because they had not filed their oaths of office was denied on the merits. Thompson has not set forth any basis for his allegations and the Court finds them meritless. Indeed, in opposition to Thompson's motion, respondent submitted the affidavit of Eric M. Kornblau, Counsel to the Kings County Clerk's Office, verifying that Justice Feldman took an oath of office and signed the oath book on December 28, 1977. Respondent also submitted photocopies of the filed oaths of office of Justice Feldman and two other judges named in Thompson's motion. The claim is denied.

### E.    Ineffective Assistance of Trial Counsel

Thompson also argues that his counsel was ineffective for (1) not moving to preclude identification testimony because of a lack of a timely N.Y. Crim. Proc. Law § 710.30(1)(b) notice and (2) failing to object to the state's introduction of hearsay evidence. As detailed above, these claims are procedurally barred. However, even if this Court were to consider the ineffective assistance of trial counsel claims on their merits, Thompson would not be entitled to relief.

To prevail on an ineffective assistance of counsel claim, a defendant must show (1) that counsel's representation was deficient, meaning that it "fell below an objective standard of reasonableness"; and (2) "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. 668, 688, 694 (1984). Under the first prong, courts must be "highly deferential" to counsel's performance, and must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689. The defendant's representation is constitutionally deficient only if "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. at 687; see also Eze v. Senkowski, 321 F.3d 110, 125 (2d Cir. 2003). To satisfy the prejudice prong, the defendant must

23

show a "reasonable probability" that counsel's deficient performance was "sufficient to undermine confidence in the outcome" of the trial or proceeding. Strickland, 466 U.S. at 694.

The state court, in considering Thompson's third § 440.10 motion, found that his claim of ineffective assistance related to § 710.30(1)(b) was "belied by the court file." Section 710.30(1)(b) requires the state to give notice of its intention to introduce testimony at trial "regarding an observation of the defendant either at the time or place of the commission of the offense . . . by a witness who has previously identified him or her as such." See People v. Jackson, 43 A.D.3d 488, 488-89 (2d Dep't 2007) (emphasis and alterations omitted). The purpose of the statute is to protect against unduly suggestive pretrial procedures by providing the defendant "the opportunity to contest the identification by means of a Wade hearing." Id. at 489. The court found that a Voluntary Disclosure Form in the court file dated July 9, 2004, three days before Thompson's arraignment, demonstrates that notice was timely served pursuant to N.Y. Crim. Proc. Law § 710.30(1)(b) and that the Wade hearing was held pursuant to that notice upon defense counsel's omnibus motion. (N.Y. Sup. Ct. Aug. 25, 2009 at 1 & n.2; see Wade Hearing, Oct. 6, 2005 Tr. at 11-48.) The court's rejection of this ground for ineffective assistance of trial counsel is neither contrary to, nor an unreasonable application of, clearly established federal law.

The state court did not reach the merits of the claim that trial counsel was ineffective for failing to object to the state's introduction of hearsay, so this Court's review on the merits would be de novo. Thompson argues that his trial counsel's failure to object to the following alleged hearsay testimony constituted ineffective assistance of counsel:

(1) Testimony by Kristin Roman, a forensic pathologist with the Office of the Chief Medical Examiner of the City of New York, regarding an autopsy report prepared by Dr. Charles Cantonese. (Trial Tr. at 160-174.)

(2) Testimony by Irene Torres that Thompson told her that he had argued with Feliciano prior to her death. (Id. at 190.)

24

(3) Testimony by Iris Velasquez that she had heard Thompson threaten Feliciano. (Id. at 229.)

(4) Testimony by Shiquon Alston that Feliciano identified Thompson to Alston when she saw Thompson walking towards her. (Id. at 45-46.)

(Pet. Mem. of Law, D.E. #12 at 31-32).

Thompson cannot prevail on this claim because he has failed to demonstrate that his counsel's failure to object was unreasonable or that he suffered any prejudice as a result. At the time of Thompson's trial, autopsy reports were routinely admitted as business records under New York law, so any objection would likely have been overruled. See Edwards v. Artus, No. 06 CV 5995, 2009 WL 742735, at *7 (E.D.N.Y. Mar. 20, 2009) ("The autopsy report having been properly admitted at petitioner's trial, the non-examining medical examiner was free to testify about its contents, so a hearsay or Confrontation Clause objection would have been fruitless."); see also United States v. Feliz, 467 F.3d 227, 236 (2d Cir. 2006). Although recent Supreme Court jurisprudence has called into question whether autopsy reports are categorically nontesti-monial, see Melendez-Diaz v. Massachusetts, 557 U.S. 305 (2009), defense counsel's failure to object to the admission of the report did not fall below an objective standard of reasonableness given New York and federal law at the time. Moreover, Thompson has not demonstrated that he was prejudiced in any way by the admission of the autopsy report.

The testimony of Torres and Velasquez was also properly admitted since Thompson's own statements, since they were offered against him, fell within the New York hearsay exception for party admissions. See, e.g., People v. Collins, 301 A.D.2d 452 (1st Dep't 2003) (finding ad-mission of defendant's statement that "clearly reflected defendant's intent to harm his ultimate victims" proper as exception to hearsay rule). Lastly, Alston's testimony that Feliciano said, "There he go, right there," after seeing Thompson at the park may well have been admissible un-

der the present sense impression to the hearsay rule or as an excited utterance. See, e.g., People v. Neloms, 8 A.D.3d 136 (1st Dep't 2004). It is not necessary to speculate on whether the statement would have been deemed inadmissible hearsay by the trial court, since defense counsel's failure to object does not rise to the level of constitutionally ineffective assistance of counsel. See Henry v. Poole, 409 F.3d 48, 63 (2d Cir. 2005) ("Actions or omissions by counsel that 'might be considered sound trial strategy' do not constitute ineffective assistance.") (quoting Strickland, 466 U.S. at 689). Nor has Thompson demonstrated prejudice as required by the second prong of the Strickland test. In light of the remainder of Alston's testimony as well as the other evidence at trial, there is no reasonable probability that had counsel objected, the verdict would have been different.

F.     Ineffective Assistance of Appellate Counsel

Finally, Thompson asserts that his appellate counsel rendered ineffective assistance by failing to argue on direct appeal that (1) trial counsel was ineffective for failing to object to the state's introduction of hearsay and (2) the trial court erred in submitting the murder charge to the jury after dismissing the weapons possession counts. The Appellate Division rejected these claims on the merits, People v. Thompson, 65 A.D.3d at 1266, and the Court of Appeals denied leave to appeal, 14 N.Y.3d 806 (2010).

The state court's denial of Thompson's claims of ineffective assistance of appellate counsel was neither contrary to, nor an unreasonable application of, clearly established federal law. For the same reasons that trial counsel was not ineffective for failing to object to the alleged hearsay statements, appellate counsel was not ineffective for failing to raise the failure to object as a claim on direct appeal. Further, Thompson himself raised the claim that the murder charge should have been dismissed along with the weapons charges in his supplemental pro se appellate

brief. (See Supp. App. Br. at 15-16.) The Appellate Division found this latter claim both procedurally barred and without merit, People v. Thompson, 54 A.D.3d at 976; therefore, Thompson suffered no prejudice from appellate counsel's failure to raise the claim in the counseled appellate brief. The ineffective assistance of appellate counsel claims are denied.

## CONCLUSION

For the above reasons, the petition is denied. Thompson has not made a substantial showing of the denial of a federal constitutional right, so no Certificate of Appealability shall issue. 28 U.S.C. § 2253(c). The Clerk of Court is directed to enter judgment accordingly and to close the case.


SO ORDERED.

Dated: December 5 , 2013
      Brooklyn, N.Y.


                                       Carol Bagley Amon
                                       Chief United States District Judge